IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JILL STEIN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 2:12-CV-42-WKW [WO] |
| ) | |
| BETH CHAPMAN, ) | |
| Alabama Secretary of State, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case involves a challenge to the Alabama election laws establishing the dates for when political parties must file petitions with the secretary of state to appear on the November presidential general election ballot. Plaintiffs include three political parties, candidates of those parties who are running for the Presidency, out-of-state voters supporting each political party, and an Alabaman supporter for each respective political party who intends to vote for the nominee of that party. The Defendant is Beth Chapman, Alabama's Secretary of State, in her official capacity as the state officer responsible for enforcing Alabama's election laws.

On February 24, 2012, Plaintiffs filed a motion for preliminary injunction. They assert that the deadlines in the Alabama statutes violate their First Amendment

rights and the Fourteenth Amendment's Equal Protection Clause.[1]  They seek a preliminary injunction which will enjoin Chapman and her agents and employees from following and enforcing the provisions of Ala. Code §§ 17-6-22 and 17-13-40 for the 2012 Alabama General Elections, statutes which set deadlines by which parties seeking identification on the ballot must file petitions with the Alabama Secretary of State.[2] Additionally, Plaintiffs seek attorneys' fees and costs, and any additional relief that is equitable and just.  Only the deadline for filing a petition is being challenged in this motion, and not the number of signatures required for a successful petition. (*See* Docs. # 20, 43.)

Under consideration are Plaintiffs' Motion for Preliminary Injunction (Doc. # 22), filed pursuant to Rule 65 of the Federal Rules of Civil Procedure, Defendant's response (Doc. # 41), Plaintiffs' Reply (Doc. # 42), Defendant's supplemental opposition (Doc. # 60), Plaintiffs' Reply to the Supplemental Opposition (Doc. # 62), Defendant's Response in Opposition (Doc. # 63) and the evidentiary submissions filed

---

[1] The allegations are that the statutes unconstitutionally burden Plaintiffs' freedom of association rights under the First and Fourteenth Amendments to the Federal Constitution. While a violation of the Fourteenth Amendment is claimed, only association rights are specifically argued, and not an equal protection violation.  The motion can be fairly construed to allege violations of both provisions.

[2] It is impossible to grant all the relief Plaintiffs seek.  The 2012 Alabama primary already occurred, on Tuesday, March 13.  However, the primary election is not at issue here.  No Plaintiff has alleged any harm to a party by not having access to the March 13 ballot.  The Alabama filing deadline is not alleged to have affected the parties' nominating and selection processes for candidates for president and other federal offices.

by the parties.³  After careful consideration of the arguments of counsel and the relevant law, the court finds that Plaintiffs' motion for preliminary injunction is due to be denied.

## II.  JURISDICTION AND VENUE

Subject matter jurisdiction is properly invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).  Venue and personal jurisdiction are not contested, and there are adequate allegations of both.

## III.  LEGAL STANDARDS

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court."  *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002).  To prevail on a motion for preliminary injunction, the plaintiff bears the burden of demonstrating that

> (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir.

---

³ The parties have filed three joint stipulations of facts (Docs. # 38, 46, 50).  Plaintiffs have also filed three evidentiary submissions (Docs. # 24-34, 57, 59, 61) and Defendant has filed three evidentiary submissions (Docs. # 39, 40, 58).

2000)). "'A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites.'" *Am. Civil Liberties Union of Fla.*, 557 F.3d at 1198 (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)). "[P]reliminary injunctions of legislative enactments—because they interfere with the democratic process and lack the safeguards against abuse or error that come with a full trial on the merits—must be granted reluctantly and only upon a clear showing that the injunction before trial is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts." *Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990).

Of course, the preliminary injunction rules assume a mantel of meaning only when framed in the context of the substantive constitutional law applicable to the topic at hand. Candidates possess constitutional rights under the First and Fourteenth Amendments to associate for political ends and to participate equally in the electoral process. *See Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 787–88 (1983). Ballot access restrictions also implicate the constitutional rights of voters, especially those with preferences outside the existing parties, to associate and cast their votes effectively. *See Williams v. Rhodes*, 393 U.S.

23, 30 (1968). However, the Supreme Court ''long has recognized that states have important and compelling interests in regulating the election process and in having ballot access requirements.'' *Green v. Mortham*, 155 F.3d 1332, 1335 (11th Cir. 1998).

First Amendment challenges to state election law are governed by *Anderson*, 460 U.S. 780. *See Swanson*, 490 F.3d at 902. Under *Anderson*, a reviewing court must first "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendment." 460 U.S. at 789. Then the court must "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id.* Finally, the court must "determine the legitimacy and strength of each of those interests," while also considering "the extent to which those interests make it necessary to burden the Plaintiff's rights." *Id.*

Furthermore, if the state election scheme imposes 'severe burdens' on the plaintiffs' constitutional rights, it may survive only if it is "narrowly tailored and advance[s] a compelling state interest." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). But when a state ballot access law provision imposes only "reasonable, nondiscriminatory restrictions" upon the plaintiffs' First and Fourteenth Amendment rights, "a State's 'important regulatory interests' will usually be enough

5

to 'justify reasonable, nondiscriminatory restrictions.'" *Id.* (quoting *Burdick*, 504 U.S. at 434). However, the intensity of the scrutiny applied to ballot access laws varies based on the burden associated with those laws. "Lesser burdens trigger less exacting review." *Id.* The court should also consider if the burden has the effect of preventing third party access to ballots, thereby "freez[ing] the status quo" which would make the law's constitutionality doubtful. *Jenness v. Fortson*, 403 U.S. 431, 441-42 (1971).

## IV. BACKGROUND

Plaintiffs Alabama Green Party, Constitutional Party of Alabama, and Libertarian Party of Alabama ("Plaintiff Political Parties") are unqualified political parties (under the definition from Ala. Code § 17-13-40) that seek to have the nominees of their respective parties placed on the 2012 Alabama General Election ballot for the office of President of the United States. Plaintiffs Matthew Hellinger, Robert Collins, Joshua Cassity, Steven Kneussle, and Mark Bodenhausen (Plaintiff Alabama Voters) are members, officers, and supporters of Plaintiff Political Parties and Alabama residents who wish to vote for and support their chosen candidates for president at the 2012 Alabama General Election. Plaintiff Jill Stein is a presidential candidate of an unqualified political party who wishes to appear on the Alabama General Election ballot as a nominee of the Green Party if she secures the nomination of the Green Party at its nominating convention this summer. Plaintiff Vicki Kirkland

is a United States citizen and voter who wishes to support and vote for the candidate of her political party, the Alabama affiliate of which is a Plaintiff Political Party. Defendant Chapman is being sued in her official capacity as Secretary of State for the State of Alabama and Chief Elections Official for Alabama under Ala. Code § 17-1-3(a).

In Alabama, there is a bifurcation of the requirements for a candidate of a party to appear with party identification on the ballot, and for an independent candidate to appear on the ballot without party identification. For a candidate who wishes to appear on the ballot without party identification as an independent, all that is required is filing a petition with 5,000 signatures by September before the election.[4] The requirements for a candidate to appear with printed party identification on the General Election ballot (essentially, for the party label to appear alongside the name of a candidate on the ballot) are significantly heightened. The state laws place qualification requirements on the parties, not on the candidates themselves.

There are two ways for a party to qualify and appear with a label on the General Election ballot:

---

[4] The motion for preliminary injunction does not challenge the restriction on candidates who appear on the ballot as an independent or without a party identification or logo on the ballot. This restriction is an issue in the broader suit.

(1)     Performance.  A political party becomes a recognized political party (which allows its candidate to appear with party identification and/or a logo on the general election ballot) by sufficient performance in the preceding election.  Political parties that earn statewide General Election ballot access based on past electoral support do so by achieving at least 20% of the entire vote actually cast for a state officer in the prior General Election. Ala. Code § 17-13-40.  This qualification is only good for the next election, so a party must continually get 20% of the vote for at least one state officer on the ballot in order to qualify under § 17-13-40 for the next cycle.

(2)     Petition.  If a party does not secure 20% of the vote for a state official in the previous election, it must file a petition by the date of the *first* primary election for the next election, with the signatures of at least 3% of the qualified voters who cast a ballot for governor.[5]  Ala. Code § 17-6-22(a)(1).

Plaintiff Political Parties are currently unqualified for the General Election ballot, and did not have sufficient success in the previous election to qualify based on the performance provision.[6]  Thus, to secure statewide General Election ballot access

---

[5] The petition requirement does not require the state to only accept signatures from voters who actually voted in the previous gubernatorial election, but requires signatures from registered voters that total 3% of the previous total vote for governor.

[6] The last third party candidate to appear on the presidential ballot with party identification was Harry Browne, in 2000, for the Libertarian Party, which filed a petition with 39,535 signatures.  The Libertarian Party also secured party identification using the 20% rule in 2000, for the 2002 election cycle, by votes for a state supreme court justice.  In 1996, two parties achieved label status in Alabama: the Libertarian and Natural Law parties.  The Libertarian Party

for their presidential candidates, Plaintiff Political Parties must collect a number of signatures equal to 3% of the number of voters for governor in the previous statewide General Election and present those signatures to the Secretary of State by the date of the first Primary Election. To secure such a spot in the 2012 General Election, Plaintiff Political Parties would need to gather valid signatures from 44,828 registered voters, which represents 3% of the votes cast for governor in the 2010 General Election.[7] Plaintiff Political Parties allege that they would need to spend at least $100,000 to collect the required signatures in the time frame provided.[8] They further claim that sum exceeds the annual budget of all Plaintiff Political Parties.[9]

For the current election cycle, those signatures must have been collected and presented to the Secretary of State by March 13, 2012, eight months before the General Election. In previous election cycles where the first primary was held in June, unrecognized political parties essentially had an additional three months to gather signatures, because the deadline was tied to the date of the primary election. Alabama previously held two general election primaries, one for presidential primaries

---

did so through the petition system, but under the old 1% rule, which was changed in 1995.

[7] *See* "Alabama Sec'y of State Web Site," http://www.sos.state.al.us/, last visited July 18, 2012.

[8] It is unclear if this is the cost of collecting the signatures for all the parties, or if each party would have to spend that much individually to gather the signatures.

[9] It is also unclear if they mean the state party or national party.

in February and primaries for all other offices in June. Under the old system, third parties could file their petitions by the date of either primary, giving them an effective deadline of June before the November election. In 2011, Alabama consolidated these two primaries into one, to be held in March of presidential election years, and in June of off-years/midterms. The purpose was to save money by avoiding multiple primaries. Plaintiffs speculate that the March deadline resulted in unintended consequences to non-qualified parties.

As a result of the March deadline adopted in 2011, the petition must be submitted months before the nominating conventions for the Plaintiff Political Parties. Plaintiffs contend the requirement (as they interpret it) that the petition include the name of the individual nominee is unduly burdensome, in light of the fact that the conventions that will select the presidential nominee occur after the March 13 primary. They argue that it creates a burden for the party, since a candidate of an unrecognized political party might petition to gain ballot access in Alabama but fail to earn his or her party's nomination.

A key consideration is whether a third party is forced to name its presidential nominee when the party submits its petition to become qualified under Alabama law. (*See* Doc. # 23; *see also* Doc. # 41 at 16.) Alabama allows the eventual presidential nominee of a recognized party to be substituted in order to appear on the General

Election ballot. Ala. Code § 17-14-31. A political party may file a certificate of nomination "no later than the 6th day of September next preceding the day fixed for the election." Ala. Code § 17-14-31(b). Section 17-14-31 makes no distinction based on how a political party achieved ballot access, *i.e.*, whether it is based on past electoral support or via petition.

## V. DISCUSSION

Plaintiffs' motion for preliminary injunction only challenges enforcement of the March 13 deadline for filing a party identification petition, Ala. Code §§ 17-6-22 and 17-13-40, for the 2012 Alabama Primary and General Elections. The 3% requirement for the number of signatures required for a successful petition is not challenged in this motion. (*See* Docs. # 20, 22, 23, 43.) As a result, the court will examine only whether the deadlines imposed by the Alabama statutes violate Plaintiffs' First Amendment rights and the Fourteenth Amendment's Equal Protection Clause. To secure relief, Plaintiffs must prove it is the imposition of the earlier deadline that burdens their rights in an unconstitutional manner, and that a preliminary injunction can issue on that ground alone.

However, Plaintiffs' attack on the deadlines misses the mark in a significant way. Plaintiffs' briefing focuses nearly exclusively on the alleged prejudice to the *candidates* in having to be identified by March 13, and not on the requirements for

*parties.* Plaintiffs allege that there is a requirement that individual candidates be qualified for the November ballot by March 13, even if that candidate is not yet the nominee of their respective political party, since those nominations typically occur over the summer preceding the election. (Doc. # 23 at 8.) Thus, the burden alleged is the inability to substitute the actual candidate selected by the party nomination process. (Doc. # 23 at 8–9.)

However, Plaintiffs' arguments on this point fail to demonstrate that the four preliminary injunction factors, typically dominated by "substantial likelihood of success on the merits" are met here. The reason is simple: Plaintiffs' arguments are built around clearly erroneous conclusions of Alabama law. The first erroneous conclusion, stated variously but repeatedly in the briefing, is "if unqualified political parties wish to have their nominee on the ballot as a party nominee, they must select their candidate and successfully comply with the petition requirements by March 13 . . . ." (Doc. # 23 at 1–2.) In fact, if Plaintiffs had reviewed Ala. Code § 17-14-31, a statute tellingly not cited by Plaintiffs in their complaint, motion, or (on this important point) their briefing, it would have been obvious that the deadline for presidential *candidates* to have ballot access is "the 6th day of September next preceding the day fixed for the election." Ala. Code § 17-14-31(b). The March 13 deadline is for political *parties* qualification; indeed, the Secretary of State's form for filing for the

12

party deadline does not mention *or* require the name of a candidate for that party. (Doc. # 39, Ex. 1 at 9.) The September 6 deadline applies to presidential candidates for *all* political parties, and does not exclude minor parties or any party that has fulfilled one of the ballot access mechanisms. This interpretation, to the extent that interpretation is required, has been repeatedly affirmed by the Secretary of State in her briefing and is binding upon her and the State of Alabama.

The second erroneous conclusion is related to the first: "Alabama does not allow an unqualified political party to substitute the name of its presidential nominee for the name of the petitioning candidate on the General Election ballot." (Doc. # 23 at 4.) Plaintiffs cite as authority for this conclusion the 2004 opinion of the Alabama Attorney General to a prior secretary of state with regard to independent candidates for president. *See* A.G. No. 2004-106, dated March 30, 2004 (Doc. # 34). This opinion is wholly inapplicable to the current situation. It deals with a different section of the Alabama Code, § 17-19-2, and applies only to independent candidates, and not candidates who would appear with the label of a party. Furthermore, this opinion offers no interpretation of Ala. Code § 17-14-31, and, if it had, would clearly contradict the plain language of that section.

Indeed, the record establishes that Alabama's ballot entry system for presidential races requires only that the parties, or "teams" for the purpose of this race,

13

be identified, signed up, and qualified by March 13. Some parties will then have their members engage in a primary, similar to teams holding try-outs for players. The primary is one of several mechanisms to determine who will be selected at the convention to participate in the final race for the presidency. The lineup for this final race is required to be set by September 6, at which point the candidates for the parties will be known, and the teams will have named players to participate in the final event, the November General Election. Plaintiffs' interpretation of this section directed the bulk of Plaintiffs' motion toward arguing against a factual situation that does not exist in reality, and for which there can obviously be no substantial likelihood of success on the merits.

A collateral effect of Plaintiffs' defective attack is that it skirts the analysis of the important constitutional issues that might have been raised and argued. The only points of argument that have a basis in reality are two undeveloped paragraphs in Plaintiffs' initial motion (Doc. # 23 at 7) and a reference to circuit case law in a reply brief that was intended to serve as a response to Defendant's third evidentiary submission (Doc. # 62 at 4). In those parts, Plaintiffs allege that the March 13 deadline itself imposes a significant burden on attempts to access the general election ballot, and that there is no compelling state interest in maintaining this deadline. Specifically, Plaintiffs allege that earlier in the political process, "[v]olunteers are

14

more difficult to recruit and retain, media publicity and campaign contributions are more difficult to secure, and voters are less interested in the campaign" and that this demonstrates an unconstitutional burden. (Doc. # 23 at 7.) Plaintiffs also facially challenge the March 13 date, claiming that it is an earlier date than has been found constitutional, that the court is bound by *Anderson*, 460 U.S. 780, and *New Alliance Party v. Hand*, 933 F.2d 1568 (11th Cir. 1991). Despite the weakness of these allegations due to their lack of development, the analysis will now turn to whether Plaintiffs have satisfied the preliminary injunction standard on this narrow point.

The analysis in election deadline cases consists of initially determining the difficulty imposed by the challenged provision, in this case, the difficulty of meeting the early deadline, and then weighing the interests advanced by the State as justifications for any burden on those who seek ballot access against the burden involved. *See Anderson*, 460 U.S. at 791 n.12. *See also Bergland v. Harris*, 767 F.2d 1551, 1554 (11th Cir. 1985). Such a careful balancing requires a searching inquiry of present conditions that prevail in this jurisdiction during this election cycle. Therefore, it would be inappropriate to rely on the factual findings of the balance of burdens that prevailed in Ohio in 1980, when the challenged action in *Anderson* occurred. The factual determinations in *Anderson* are immediately distinguishable.

The other case Plaintiffs raise as binding is *New Alliance*. In *New Alliance*, an Alabama statute setting the deadline of a non-presidential general ballot access petition for April 6th preceding the election was found to be unconstitutional.[10] *New Alliance*, 933 F.2d 1568. Each case turned on a careful balancing and analysis of the burden faced by the particular parties to get ballot access weighed against the state interests in the requirements.

While *New Alliance* facially seems to resolve the issue of the deadline, a careful examination of the standard and the different record in this case reveal that the outcome in *New Alliance* is not mandated here. *New Alliance* involved a challenge to deadlines imposed in a midterm congressional election, and not a presidential contest. The factual record in *New Alliance* was also much more developed. In *New Alliance*, the court received evidence from an election law scholar, Dr. Lichtman, which persuaded the court that the specific effect of the earlier deadline was to preclude the parties from gathering signatures during the most critical part of the election cycle. *New Alliance*, 933 F.2d at 1571–72. Dr. Lichtman offered an opinion about the level of political activity and other unique characteristics of the April to June time frame for the 1990 general election. He concluded that the political factors

---

[10] The court viewed the burden of the earlier deadline as "not insurmountable . . . [but not] adequately justif[ied] [by] the restriction imposed." *New Alliance*, 933 F.2d at 1576.

involved during a specific time frame with unique opportunities and characteristics. This, in conjunction with the other witness testimony and the successful completion of the plaintiffs' petition drive in June, was instrumental in persuading the court that the burden of not being able to gather signatures after April outweighed the state's interest in protecting its deadline.  However, on this record, there is no such learned analysis of the significance, if any, of the specific characteristics of the months of March through August during *this* election cycle.  Without such testimony, the burden faced from lost opportunities cannot be evaluated, because the particular nature of this election cycle cannot be determined.  It would be inappropriate to rely on factual findings from a case involving a non-presidential election that occurred over twenty years ago, when the legal standards clearly establish that a careful balancing of factors involving *current* conditions is required.

The allegations concerning the burden imposed by the timing of the March 13 deadline are insufficiently developed to demonstrate that there is any likelihood of success on the merits.  The evidence provided by Plaintiffs does not rise to the level of the record in *New Alliance*.  Plaintiffs' affidavits from party members and volunteers collecting signatures do not provide a sufficient basis to reach any of the conclusions argued by Plaintiffs in their brief.  Additionally, the expert opinions offered by Plaintiff witness Richard Winger do not extend to the specific arguments

concerning the unique factors, if any, about the months leading up to the 2012 November Election.[11]  References to previous cases, which conducted their own factual findings to unique election cycles and localities, are distinguishable at best and are most likely inapt to the current situation.  Due to the paucity of analysis of the cases cited by Plaintiffs, there are no grounds to extend any specific finding or general holding to this facts of this case.

The parties have filed two new stipulations of fact (Docs. # 46, 50), which are critical evidence on the issue of burden.  Most telling is that the third party organization, Americans Elect, "has qualified for Statewide ballot access for Alabama's 2012 General Election," (Doc. # 50 at ¶ 14).  This fact further demonstrates that the State's ballot access laws do not prevent a diligent political party from achieving ballot access, and undermines Plaintiffs' likelihood of being able to prove that the March 13 deadline impermissibly freezes ballot access.  Defendants have presented substantial unrebutted evidence that the deadline is no barrier for a

---

[11] Even if Mr. Winger's opinion is considered broadly as supporting a conclusion of a generic burden on the candidates, Defendant's Third Evidentiary Submission (Doc. # 58) included an expert report by Professor Hood specifically rebutting Mr. Winger's Opinion Three, which goes to the issue of whether political parties are burdened when their presidential candidates appear without their party label.  This was further substantiated by the Chairman of the Alabama Republican Executive Committee, the Executive Director of the Alabama Democratic Party, and an independent candidate who achieved ballot access to run for district judge in Walker County, and a variety of persons involved in the election cycle have also provided evidence arguing against an unconstitutional burden faced by Plaintiffs.  The dispute on this point counsels against relying on Mr. Winger's opinion as grounds for issuing a preliminary injunction.

zealous party interested in gaining ballot access and expending the resources required to get onto the ballot.

Plaintiffs have failed to distinguish the generic difficulty in gaining access to the ballot with particular burdens that could be attributed to the March deadline. Plaintiffs have failed to provide an evidentiary basis to conclude that the deadline is providing unique burdens that are unconstitutional. Even without considering the state's interest, Plaintiffs cannot demonstrate that they are substantially likely to prevail on the merits, based on this evidentiary record and the significant opposition demonstrated by Defendant. Because of Plaintiffs' failure to demonstrate a substantial likelihood of success on the merits, the other parts of the preliminary injunction test need not be addressed, and Plaintiffs' motion for preliminary injunction is due to be denied.

## VI.  CONCLUSION

For the forgoing reasons, it is ORDERED that Plaintiffs' motion for preliminary injunction (Doc. # 22) is DENIED.

DONE this 19th day of July, 2012.

        /s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE